[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff is thirty-seven years old and the defendant is forty. The marriage is the first for both. The parties have lived together as husband and wife for approximately ten years. There are two minor children issue of the marriage: Stephen M. Rinaldi, born May 5, 1990; and Michael J. Rinaldi, born March 4, 1993. The court has the requisite jurisdiction. The marriage has broken down irretrievably and the marriage is dissolved on this basis.
The plaintiff testified that both parties dated extensively CT Page 15130 prior to their marriage on February 14, 1987. Both came from relatively humble origins, they worked extremely hard both in college and with outside employment during the course of their education. They both paid for their wedding. Their lives in many ways parallel one another. Plaintiff attended the Fashion Institute of Technology in New York City and graduated after four years. She has, to date, done little to pursue her education or become further involved in fashion-related employment. She has a part-time job that has kept her busy but generated little income. She has the responsibility of two young boys that has seriously limited her ability to work on a full-time basis. Plaintiff has a very high energy level and is bright and articulate. She has an excellent education, and with some additional computer training, could easily update her basic skills. With her young age and education background, her career is still in front of her.
The defendant is employed as an employer benefit consultant and is a 40 percent owner in Everett-James, Inc. He claims the value of his interest in Everett-James is $37,000. Plaintiff offered testimony to an expert that defendant's interest should be valued at $55,000 instead of $37,000, but conceded that there are many variations in this type of business. The fact that it is a personal service business, with few tangible assets, militates against treating this as a major asset at this time. It would also appear that the highly charged atmosphere of this very contentious dissolution has not made things easier for the defendant. His ability to concentrate on generating income has obviously been affected by this proceeding and his income has, in fact, fallen off substantially.
Somewhat akin to George Axelrod's play, The Seven Year Itch, the defendant, who tired of his marital relationship and his romantic interests took a wayward turn. Defendant's itch, however, became irreversible. Through the assistance of America On-Line, he developed an interest with a woman in Missouri and even flew out to meet her. She subsequently came to New York State to visit with the defendant. Plaintiff correctly felt her space being taken and began a lengthy and full-blown investigation. Defendant, when confronted, was not candid in his responses. His outside interests continued with a new paramour, Christine Bryant, and this led to a confrontation in a school parking lot in Wilton when the plaintiff discovered defendant in his automobile with Ms. Bryant engaged in a tryst. As a result of this confrontation, arrests were made of the plaintiff and defendant and Ms. Bryant. During the course of the custody study, CT Page 15131 the defendant suggested to the Family Services officer that the plaintiff was having an affair during the early course of the marriage and submitted documentation purporting to support this claim. Plaintiff testified categorically that she never had any extramarital relationships and in fact there was no evidence to support this allegation. To suggest to a Family Relations officer doing a custody study about a claim of unfounded infidelity, is something that the Court does not continence and frowns upon. It is clear that the defendant's conduct is the cause of the breakdown of this marriage, but the Court is also required to consider many other factors in making its financial determination. The Court has carefully considered all of the statutory criteria enumerated in Connecticut General Statutes §§46b-82 and 46b-81c in making its decision.
Plaintiff concedes that defendant is a good father and she readily admits he puts their two sons' interest first. A major asset of the parties is their home in Ridgefield. It is valued at $270,000, and has equity of approximately $100,000. Because the defendant wants to maintain the home for his two sons, and plaintiff wants to continue to live in this home in Ridgefield, factoring in broker's fees and closing costs is inappropriate.
 ORDERS
1. The marriage is dissolved on the grounds of irretrievable breakdown.
2. Custody and visitation shall be in accordance with the parties' pendente lite parenting plan attached hereto. The parenting plan shall be modified in the following respects: Mother's Day from 10 a.m. until 6 p. m. shall be spent with the plaintiff; and defendant shall have the minor children from 10 a.m. until 6 p. m. on Father's Day. The children shall also be with the defendant on Tuesdays after school until 7:30 p. m.
3. The defendant shall pay, as unallocated alimony and child support, the sum of $5500 per month for a term of ten years or until the death of either party, the plaintiff's remarriage or her cohabitation. The term of alimony shall be nonmodifiable. Upon the termination of alimony, the defendant shall pay child support in the sum of $2000 per month so long as defendant is obligated to pay same.
4. The defendant shall transfer title to the marital home as CT Page 15132 well as its contents for the plaintiff. Plaintiff shall indemnify and hold the defendant harmless as to all expenses associated with the marital home, including real estate taxes, mortgage payment, household repairs, etc.
5. The defendant shall maintain medical and hospitalization insurance for the benefit of the minor children. Any obligation for unreimbursed medical or dental expenses shall be paid equally by the parties. Plaintiff shall not incur any major medical or orthodontic expenses without first obtaining defendant's consent. Plaintiff shall be entitled to COBRA benefits at her own expense.
6. Defendant shall retain his interest in Everett-James, Inc., and plaintiff shall make no claim relating thereto.
7. The Series EE Savings Bonds, American Century Growth Securities, Fidelity Magellan Mutual Fund, Proctor and Gamble Securities, Charles Schwab Securities Account, Dress Barn, Ann Taylor Securities, IBM, K Mart, Utopia stock, and Fidelity Contra Securities shall be divided as follows: 70 percent to the defendant and 30 percent to the plaintiff. Plaintiff shall retain her jewelry, her savings bonds, checking account and her IRA deferred compensation plan, and defendant shall make no claim for same. Defendant shall retain his own bank accounts.
8. Plaintiff and defendant shall each be responsible for the debts listed on their respective financial affidavits.
9. The Ford Explorer shall be the sole property of the plaintiff, and the defendant shall have, as his sole property, the 1999 Jetta and the 1989 Chevrolet Blazer. Defendant shall be responsible for any and all financial and tax obligations relating to these two motor vehicles.
10. Defendant shall name the plaintiff as beneficiary on his Key Man life insurance policy in the amount $350,000, which amount shall be reduced as defendant's alimony obligation is reduced. Upon termination of defendant's alimony obligation, he shall designate each child as beneficiary of $175,000 of life insurance on his life until each child has attained the age of nineteen or is graduated from high school.
11. Each party shall be responsible for their respective counsel fees. CT Page 15133
12. The parties shall file joint and federal income tax returns for the tax years 1997 and 1998, and shall divide equally any tax refunds. Any balances due shall be the responsibility of the defendant.
Owens, J.
 Pendente Lite Agreement re Custody and Parenting Plan
The parties hereby agree as follows:
1. The parties shall have joint custody of the minor children, whose primary residence shall be with the mother.
2. The parties agree to the parenting plan that is attached hereto.
PARENTING PLAN
Stephen J. Rinaldi spends the following time with the children:
1. Alternating weekends Thursday after school until Sunday at 7:30 p. m.
2. Alternating Thursday preceding the mother's weekends from after school until Friday morning when the children are taken to school, if no school until 8:30 a.m.
3. Alternating Tuesdays subsequent to the mother's weekends after school until 7:30 p. m.
4. Minor holidays — Husband get the extra Mondays following his weekends if its' a holiday until Monday at 6:00 p. m.
5. Thanksgiving holiday shall be alternated, with the children spending from Wednesday after school until Friday at 6:00 p. m. with the father in odd numbered years and with the Wife in even numbered years.
6. The Christmas school vacation shall be divided and alternated, with the children spending from the close of school until December 25th at 3:00 p. m. with the Wife in odd numbered years and with the Husband in even numbered years. From December 25th at 3:00 p. m. until the day before school starts at 6:00 p. m. The children shall spend with the Husband in odd numbered years and CT Page 15134 with the Wife in even numbered years.
7. The summer vacation shall be shared equally, however, the children shall not be with either parent for more than 14 consecutive days. Unless the parent with whom children are staying, shall be on vacation with the children, the children shall have dinner with the other parent once a week on Thursdays between 5 p. m. and 8 p. m., if the other parent is available. The children shall spend the first two weeks each summer with mother (14 days) and the next two weeks of vacation (14 days) with father, and so on till the summer school vacation ends. Notwithstanding the above, the 7 days prior to the Commencement of school in each year shall be with the mother.
8. Spring vacation in odd years shall be with the Wife and in even years with the Husband. If either parent is unable to take vacation at the same time as the kids, the boys shall spend the vacation with the other parent.
9. Easter (9 a.m. until 7:30 p. m.) should be spent with the Wife in odd years and with the Husband in even years.
10. Neither parent shall expose the boys to any dating relationship while the case is pending.
11. When the Husband or the Wife have the children for overnight visitation and during vacation periods, no adult unrelated to the Husband or Wife shall be present overnight.
Pendente Lite Agreement April 26, 1999
1. The Wife shall have exclusive possession of family home.
2. The Husband shall have the right to remove the following items: his personal effects, books, tools, weight lifting equipment and bed in husband's former bedroom. Said items shall be removed within fourteen days. If there is no agreement as to a date, the date shall be May 8th.
3. The Husband shall return family photos within 10 days.
4. But for the removal of items in para 2 and packing up and returning the children the husband shall not enter the home without the Wife's consent. CT Page 15135
5. The Husband shall pay to the Wife the sum of $6,500, which represents all sums due the wife for pendente lite support through April 30, 1999. Said payment shall be made within one week. Said payments satisfies all claims the Wife has or may have as to the pendent lite orders except for weekly payments of $350, which payments are current as of today. The parties agree that a $350 payment will be due this week on April 30, 1999 in addition to the above.